NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL KIDSTAR,<br>　　　　　　　Plaintiff,<br>　　v.<br>FACEBOOK, INC. and MARK ZUCKERBERG,<br>　　　　　　　Defendants. | Civil Action No.: 2:18-cv-13558<br><br>OPINION |

**CECCHI, District Judge.**

Before the Court is the motion of Facebook, Inc. and Mark Zuckerberg ("Defendants") to transfer venue under 28 U.S.C. § 1404(a) or, in the alternative, to dismiss under Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6). ECF No. 5. The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to transfer is granted.

**I.　　BACKGROUND**

In his twelve-count complaint, Samuel Kidstar ("Plaintiff") alleges that in September 2016, due to an error caused by Defendants, Plaintiff's Facebook page was disabled, causing Plaintiff to lose access to photos he had uploaded to Facebook, and that despite Facebook's numerous attempts to rectify the problem, Plaintiff's data was not "fully recovered."[1] ECF No. 1-2 ¶¶ 2–3.

---

[1] Defendants respond that, "[w]hile outside the record on this motion to dismiss, Plaintiff's allegedly 'lost' photos remain associated with his account. Facebook has been and remains willing to restore Plaintiff's access if he provides proper documentation to verify his identity in accordance with Facebook's internal policy and data privacy obligations." ECF No. 6 at 1 n.1. Plaintiff, on the other hand, argues that "he has in fact complied with all Facebook's requests to upload his identification to confirm his identity." ECF No. 9 at 3. The Court also notes Defendants' argument that, "[n]otwithstanding the relatively simple nature of Plaintiff's alleged grievance, he seeks to hold Facebook liable on no less than twelve separate theories," each of which "claim that Facebook and its CEO breached a promise or duty to provide a 'safe space' for the photos Plaintiff uploaded

Accordingly, Plaintiff claims that Defendants are liable for, *inter alia*, fraud and breach of contract. *See* id.  Plaintiff initiated this action in New York state court on September 8, 2017. ECF No. 1-1.  Plaintiff then filed a complaint in New Jersey state court on August 6, 2018. ECF No. 1-2.  Defendants timely removed to this Court under 28 U.S.C. § 1332(a). ECF No. 1.  Defendants then filed the instant motion, seeking to transfer venue under 28 U.S.C. § 1404(a), or in the alternative, to dismiss this action under Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6). ECF No. 5.  Specifically, Defendants argue that transfer is required under the forum selection clause in Facebook's User Agreement, which Plaintiff agreed to as a condition of registering for and using Facebook. ECF No. 6 at 1–2.  Defendants submitted declarations and evidence of the User Agreement and registration process. ECF Nos. 30, 35.  Plaintiff opposes transfer. ECF Nos. 9, 34.

## II.   DISCUSSION

A district court may transfer a civil action to any other district where the case may have been brought, or to any other district to which the parties have consented. 28 U.S.C. § 1404(a). Facebook's User Agreement requires any claim or dispute to be resolved exclusively in California. ECF No. 7-3 at 5 ("[I]n a state or federal court located in Santa Clara County [which is within the Northern District of California]."); ECF No. 7-4 at 4 ("[I]n the U.S. District Court for the Northern District of California or a state court located in San Mateo County.").  Defendants argue that transfer is therefore required as Plaintiff agreed to these terms when he registered for Facebook. ECF No. 6 at 10–15.  Plaintiff asserts that although he created a Facebook account, he did not assent to the forum selection clause. ECF No. 9 at 5–9.

---

to Facebook's website.  As shown by the User Agreement, Facebook never undertook such a duty and actually disclaimed it." ECF No. 6 at 1.

2

### A.     Contract Formation[2]

In his complaint, Plaintiff alleged that he created a Facebook account in 2004 and that "[i]n 2004 Plaintiff and Defendants entered into an agreement upon the opening of Plaintiff[']s account." ECF No. 1-2 ¶¶ 2, 15.  Yet in his opposition, Plaintiff argued that he did not enter into a contract with Defendants, that Facebook's Terms and Conditions are unenforceable and invalid, and that he did not assent to a forum selection clause. ECF No. 9 at 5–6.  Facebook's records show that Plaintiff actually registered for Facebook in May 2009 and again in March 2017, which Plaintiff does not refute. ECF No. 7 ¶¶ 3–4.[3]  Facebook's registration process in 2009 and in 2017 required prospective users to acknowledge that they read and agreed to Facebook's terms, which were hyperlinked. Id. ¶ 6.  In addition, Facebook account users must agree to Facebook's terms as a condition of use. Id. ¶ 5.  Defendants argue that as an account holder, Plaintiff agreed to the User Agreement and the forum selection clause as a condition of registration and use. ECF No. 6 at 2.

The Court notes that each of Facebook's User Agreements contain an integration clause which provides that the agreement is "the entire agreement between" the user and Facebook and that the agreement "supersedes any prior agreements." Id. at 7–8 (quoting integration clauses from 2009, 2017, and 2018).  As such, even assuming, *arguendo,* that Plaintiff opened a Facebook account in 2004, the 2009 User Agreement became the governing document upon his registration in 2009 until 2017, when the 2017 User Agreement became the governing document upon his creation of a subsequent Facebook account.  Defendants assert that Plaintiff's claims must be

---

[2] As a federal court sitting in diversity jurisdiction and considering the substantive law of contact formation, as the forthcoming analysis will show, no conflict exists between the contract laws of New Jersey and California as they produce the same result. *See Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017).

[3] In analyzing venue questions, the Court may consider facts and materials outside the pleadings. *Shah v. Centurum, Inc.*, No. 10-2015, 2011 WL 1527334, at *2 (D.N.J. Apr. 20, 2011).

3

resolved in California pursuant to "the User Agreement in effect when Plaintiff opened his Facebook accounts (May 2009 or March 2017) or the User Agreement in effect when Plaintiff filed his Complaint." Id. at 13.  In considering Plaintiff's claims, regardless of whether the Court assesses the User Agreement in effect when Plaintiff created his Facebook account in 2009 or in 2017, as the following analysis will demonstrate, the Court reaches the same conclusion under either agreement.

A contract term, such as a forum selection clause, is binding if the contract was mutually agreed to by the parties, is supported by consideration, and does not violate codified standards or public policy. *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 216 (N.J. Super. Ct. App. Div. 2011).  Mutual assent requires the parties to be reasonably notified of, and understand, the terms to which they agree. *Id.*; *Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 122 (Ct. App. 2016) (citation omitted) ("[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.").  The fundamental principles of contract law apply equally to agreements made over the internet and are used to determine the enforceability of such online contracts. *Hoffman* 18 A.3d at 216–17; *Long*, 200 Cal. Rptr. 3d at 122.

The concept of "reasonable notice" is especially important for enforcing terms in an online agreement. *Hoffman*, 18 A.3d at 217–19 (applying reasonable notice standard to a forum selection clause); *Long*, 200 Cal. Rptr. 3d at 125–26 (same).  "The issue of reasonable notice regarding a forum selection clause is a question of law for the court to determine." *Caspi v. Microsoft Network, LLC*, 732 A.2d 528, 532–33 (N.J. Super. Ct. App. Div. 1999).  The court analyzes whether the plaintiff had "[r]easonably conspicuous notice of the existence of contract terms" and whether he unambiguously manifested his assent to those terms. *Specht v. Netscape Commc'ns Corp.*, 306

4

F.3d 17, 30–32, 35 (2d Cir. 2002) (applying California law); *see Hoffman*, 18 A.3d at 218 (noting that both California and New Jersey require reasonable notice).  In determining whether there was reasonable notice, the court examines the plaintiff's online user experience, including the language used, the layout of the online interface, and the appearance and location of the hyperlink to the terms. *See, e.g.*, *Specht*, 306 F.3d at 28 (noting that the district court considered affidavits, declarations, and exhibits, including "computer screen shots and other visual evidence concerning the user plaintiffs' experience of the [defendant's] webpage" in deciding whether users assented); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. Aug. 4, 2011) (enforcing arbitration clause where screenshots of plaintiff's user experience showed that reference to terms of service and hyperlinks were clearly visible due to location of the "Accept" button and the color of the hyperlink and text); *Hoffman*, 18 A.3d at 219–20 (finding that dietary supplement website structure "failed to afford potential purchasers with reasonable notice of the forum selection clause" especially as clause was not visible without "scroll[ing] down to a submerged portion of the webpage"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836–41 (S.D.N.Y. Jan. 24, 2012) (using employee declarations and screenshots to analyze website layout and language used and concluding that users had adequate notice of Facebook's User Agreement forum selection clause).

      Here, having reviewed Facebook's User Agreements from 2009 and 2017, the Court finds that Plaintiff was provided with reasonable notice of their terms. ECF Nos. 7-1–7-5; ECF No. 30. In 2009, prospective Facebook users were required to affirmatively click a "Sign Up" button, directly under which was readable, dark grey text:  "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Use and Privacy Policy." ECF Nos. 30-3, 30-4.  The words "Terms of Use" and "Privacy Policy" were in blue text and hyperlinked to the corresponding documents. Id.  In 2017, the sign-up page was slightly, but not materially, different. ECF No. 30-

5

5. To register, prospective users were required to click a "Create Account" button and above that button was readable, black text: "By clicking Create Account, you agree to our Terms and that you have read our Data Policy, including our Cookie Use." Id. Again, the words "Terms" and "Data Policy," in addition to "Cookie Use," were in blue text and hyperlinked to the corresponding documents. Id. After clicking on the hyperlinked Terms of Use, which potential users were required to read in order to create a Facebook account, the user would have seen and read the section titled "Disputes" which included the forum selection clause. *See* ECF No. 7-3 at 5; ECF No. 7-4 at 4. Under these facts, the Court finds that Plaintiff had reasonably conspicuous notice of Facebook's contract terms, based on the layout of the page, and the color, size, and location of the text. Accordingly, the Court concludes that Plaintiff unambiguously manifested his assent to these terms, including the forum selection clause, by clicking "Sign Up" in 2009 and "Create Account" in 2017, and that he entered into an agreement with Defendants by registering for Facebook. *See Swift*, 805 F. Supp. 2d at 911; *Fteja*, 841 F. Supp. 2d at 836–41.

    **B.**    **Transfer Pursuant to the Forum Selection Clause**

Having found a valid agreement between the parties, the Court must next decide whether, pursuant to the forum selection clause contained therein, to transfer this matter to the Northern District of California under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013) ("[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a) [and] a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.").

    **1.**    **Facebook's Forum Selection Clause**

Forum selection clauses are presumptively valid and enforceable. *Id.* at 63. As such, they are strictly enforced and entitled to great weight. *Mucciariello v. Viator, Inc.*, No. 18-14444, 2019

WL 4727896, at *2 (D.N.J. Sept. 27, 2019) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)).  "[T]o avoid the enforcement of a forum selection clause, the opposing party must establish:  '(1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable.'" *Mucciariello*, 2019 WL 4727896, at *3 (citation omitted).  In order to make this showing, however, "the opposing party bears 'a heavy burden of proof.'" *Id.* (citation omitted).

The forum selection clauses in Facebook's 2009[4] and 2017[5] User Agreements both required any claim, cause of action, or dispute, to be resolved in a state or federal court in California under California law. ECF No. 6 at 7.  Importantly, the Court notes that several federal courts have already held Facebook's forum selection clause to be valid.[6]

---

[4] "You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook in a *state or federal court located in Santa Clara County* [California].  The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions.  You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims." ECF No. 7-3 at 5 (emphasis added).

[5] "You will resolve any claim . . . exclusively in the *U.S. District Court for the Northern District of California or a state court located in San Mateo County* [California], and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims.  The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions." ECF No. 7-4 at 4 (emphasis added).

[6] *See, e.g.*, *We Are the People, Inc. v. Facebook, Inc.*, No. 19-8871, 2020 WL 2908260, at *2 (S.D.N.Y. June 3, 2020); *Loomer v. Facebook, Inc.*, No. 19-80893, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020); *Hayes v. Facebook*, No. 18-2333, 2019 WL 8275335, at *3 (D. Colo. Mar. 6, 2019); *Thomas v. Facebook, Inc.*, No. 18-856, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (citations omitted) ("Numerous courts have affirmed the validity and enforceability of Facebook's [terms of use] and the forum selection clause contained therein.  Indeed, the Court is not aware of any case concluding that the forum selection clause in Facebook's [terms of use] is invalid."); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018); *Franklin v. Facebook, Inc.*, No. 15-655, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015); *Fteja*, 841 F. Supp. 2d at 841 (enforcing Facebook's forum selection clause from 2009); *Miller v. Facebook, Inc.*, No. 09-2810, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010).

7

In his opposition, Plaintiff does not argue that the forum selection clause is the result of fraud or overreaching, that it violates public policy, or that its enforcement would be so seriously inconvenient as to be unreasonable. *See generally* ECF No. 9. Accordingly, the Court cannot find that Plaintiff has met his heavy burden of overcoming the forum selection clause's presumptive validity. The Court is further persuaded by the reasoning of the several other federal courts that have upheld the validity and enforceability of Facebook's forum selection clause, and thus declines to depart from this weight of authority. *See, e.g.*, *Franklin*, 2015 WL 7755670, at *2 ("Defendant's [terms of use] govern[] the legal relationship between Defendant and millions of users . . . . Because of this, the forum selection clause contained [therein] has been addressed by numerous courts in actions involving Defendant. The Court cannot identify a single instance where any federal court has struck down Defendant's [terms of use] as an impermissible contract of adhesion induced by fraud or overreaching or held the forum selection clause [to violate public policy]. . . . The Court finds the reasoning of these cases persuasive [and] declines to depart from the great weight of persuasive authority on this question."). The Court concludes that Facebook's 2009 and 2017 forum selection clauses, requiring suit to be filed in California, are valid and binding on Plaintiff.

   2. **Transfer Under 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).[7] In a typical

---

[7] The Court notes that even if this case was not subject to a forum selection clause, it could also have been brought in the Northern District of California as venue is proper there under the venue statute, 28 U.S.C. § 1391(b). *See* 28 U.S.C. § 1391(b) ("Venue in General.—A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the

§ 1404(a) transfer analysis without a forum selection clause, the court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. However, a "valid forum-selection clause . . . 'represents the parties' agreement as to the most proper forum,'" and because the interest of justice is served by holding parties to their bargain, a valid forum selection clause should be given controlling weight in a venue analysis "in all but the most exceptional cases." *Id.* at 63 (citation omitted). As a result, the presence of a valid forum selection clause changes the § 1404 analysis in three ways: (1) "the plaintiff's choice of forum merits no weight" as he seeks to defy the forum selection clause to which he agreed; (2) the court does not consider the parties' private interests, but may still consider public interest factors; and (3) the transferee court, "in the contractually selected venue[,] should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 63–66. A forum selection clause is rejected only in the exceptional case where the party opposing it shows that "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67; *see also In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401–03 (3d Cir. 2017) (applying *Atlantic Marine* standard when analyzing transfer

---

events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."). Here, venue would be proper under § 1391(b)(1) as all Defendants reside in California. *See* ECF No. 1-2 ¶ 5; ECF No. 1 ¶ 10. Alternatively, venue would also be proper under § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of California, given that the crux of Plaintiff's claim is that "[i]n or about September 2016, an error of Defendants caused his Facebook Page to be disabled," ECF No. 1-2 ¶ 3, which would have been effectuated by Facebook's employees at its headquarters in California. *See Fteja*, 841 F. Supp. 2d at 834 ("Venue is proper, *inter alia*, in 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .' 28 U.S.C. § 1391(a)(2). The Northern District of California would be such a district in this action because the nub of [Plaintiff]'s claim is that Facebook wrongfully disabled his account and the employees responsible for disabling accounts work at Facebook's headquarters in Palo Alto, California which is in the Northern District of California.").

under § 1404(a) with a forum selection clause). The public interest factors that the Court considers include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *see also In re: Howmedica*, 867 F.3d at 402–03 (citing the *Jumara* public interest factors and reiterating that a court need not consider the private interest factors when "a forum-selection clause enters the picture").

Therefore, as the Court already determined that the parties entered into a valid agreement which included a valid forum selection clause, the only remaining question is whether Plaintiff has shown that this is an exceptional case where the forum selection clause should not be enforced under § 1404(a). *See Atl. Marine*, 571 U.S. at 62. Here, as Plaintiff has not provided the Court with any argument concerning the public interest factors, he has failed to show that they disfavor transfer. *See Jumara*, 55 F.3d at 880. Nonetheless, the Court has considered the factors and finds that, on balance, transfer is appropriate. Specifically, Defendants' location in California makes it the proper venue for enforcement, and for an easier, more expeditious, and less expensive trial. Venue in California is further appropriate because of its strong interest in deciding controversies involving Facebook at home and the familiarity of its judges with applying California law, particularly in cases like this one, because, as noted above, several federal courts have enforced Facebook's forum selection clause and transferred under § 1404(a). *See supra* n.6.

Therefore, having weighed the public interest factors under § 1404(a), the Court finds that they support transferring this action to the U.S. District Court for the Northern District of California. Accordingly, the forum selection clause is entitled to controlling weight and

10

Defendants' motion to transfer must be granted.[8] *See Atl. Marine*, 571 U.S. at 61; *In re: Howmedica*, 867 F.3d at 402.

### III.   CONCLUSION

For the reasons set forth above, Defendants' motion to transfer venue to the Northern District of California (ECF No. 5) is GRANTED. An appropriate Order accompanies this Opinion.

**DATED:** July 31, 2020

**CLAIRE C. CECCHI, U.S.D.J.**

---

[8] In light of the Court's determination that this matter should be transferred to the Northern District of California, to the extent Plaintiff seeks discovery and leave to amend his complaint, *see* ECF No. 9 at 8–10, those requests may be presented to the transferee court.